FILED
98 OCT 30 PM 3: 35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re WILLIAM H. TANNER, | ] | |
| Debtor. | ] | |
| LAWYERS TITLE INSURANCE CORPORATION, | ] | |
| Appellant, | ] | CV 98-N-0071-S |
| vs. | ] | |
| WILLIAM H. TANNER, | ] | |
| Appellee. | ] | |
| CHICAGO TITLE INSURANCE COMPANY, | ] | |
| Appellant, | ] | |
| vs. | ] | CV 98-N-0073-SW |
| WILLIAM H. TANNER, | ] | |
| Appellee. | ] | |

ENTERED
OCT 3 0 1998

**Memorandum of Opinion**

In these related bankruptcy appeals, the appellants, Chicago Title Insurance Company (hereinafter "Chicago Title") and Lawyers Title Insurance Company (hereinafter "Lawyers Title"), object to the Bankruptcy Judge's finding that the debts owed to them by the appellee, William H. Tanner, were dischargeable. Specifically, the appellants argue that the debts owed to them by Tanner were subject to an exception to discharge under 11 U.S.C. § 523 because they were incurred under false pretenses or by fraud.



This court has jurisdiction pursuant to 28 U.S.C. § 158(a). The court has carefully examined the entire record and briefs on appeal and, in accord with Bankruptcy Rule 8012(3), specifically finds that "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." For the reasons set forth below, the decision of the bankruptcy judge will be affirmed.

The facts of the case, as found by the Bankruptcy Judge, were as follows: William Tanner was the president and only stockholder of W.H. Tanner, Inc. (hereinafter "the Corporation"), which constructed and sold houses. The transactions that give rise to these appeals involved the sale of two houses, built on lots 36 and 72 of the Carrisbrook subdivision. The corporation had financed their construction by executing notes and mortgages on the properties with Colonial Bank. The houses were sold and title insurance was issued by Chicago Title and Lawyers Title on lots 36 and 72, respectively. James Moncus, who closed virtually all of Tanner's sales, closed the sales of both houses.

For each closing, the Corporation executed a seller's affidavit, in which the Corporation declared that the contractor and subcontractors who worked on the property had been paid in full and that no liens or claims for payment on the property remained. The affidavit also indemnified the insurance companies for any loss resulting from misrepresentation on the affidavit.

Tanner admitted he knew that unsatisfied claims for payment from subcontractors and materialmen had been made at the time he signed the affidavits. He testified, however, that he was not attempting to defraud the title insurance companies by signing the affidavits.

Instead, he testified that the affidavits could never be entirely accurate in the new home construction business because the closing on the sale typically takes place before all the construction invoices have been received by the builder and some suppliers do not bill contractors separately on each project. Mr. Tanner's practice, according to his testimony, was to execute the affidavit and then pay the outstanding bills as they arrived. Both he and Moncus testified that they believed this to be the standard industry practice.

Never in his 26 years in the home construction business had Tanner failed to pay all of the invoices after a closing. He generally used the proceeds from the sale of one house to pay the invoices from a previously sold house, which sometimes resulted in a cash flow problem, but never interfered with his ability to pay his bills.

Just before the lot 36 sale closed, Tanner was forced to sell another house for substantially less than what he had expected. This threatened his cash flow even further, but Tanner still felt he would have sufficient funds to pay all of the bills that were submitted on the lot 36 house. In fact, Tanner was able to pay most of the suppliers and materialmen who submitted bills for the project. Tanner also testified that he felt he would be able to meet the bills on the lot 72 house, because he expected a $600,000 profit from the sale of a new house a couple of weeks later plus some other miscellaneous income. After the closing, Tanner saw an attorney about his financial situation. He then went to the banks and discussed possible financing arrangements with them, but they refused to extend his credit. His attorney then advised him not to close any more sales, take any more draws, or enter into any more contracts. He was then unable to pay the remaining suppliers on the lot 36 and lot 72 construction projects.

3

In the Bankruptcy Court, the appellants challenged the dischargeability of Tanner's debts, alleging they were subject to an exception under § 523(a)(2)(A) of the Bankruptcy Code. That section provides that a debt for money, property, services, or credit will not be discharged if it was obtained by false pretenses or fraud. 11. U.S.C. § 523(a)(2)(A). The Bankruptcy Judge found that the appellants had failed to meet their burden under § 523(a)(2)(A) because Tanner did not receive property by representations, he did not have an intent to deceive the appellants, and the appellants did not rely on the representations made by Tanner (or if they did so rely, such reliance was not justifiable).

In reviewing the decision of a Bankruptcy Court, the District Court must give due regard to the Bankruptcy Court's opportunity to judge the credibility of witnesses, and must accept the factual findings of the Bankruptcy Judge unless they are clearly erroneous. *Englander v. Mills,* 95 F.3d 1029, 1030 (11th Cir. 1996), *cert. denied,* 137 L. Ed. 2d 682. Conclusions of law are reviewed *de novo. Id.* In addition, a Bankruptcy Court's findings on mixed questions of law and fact are reviewed *de novo. Sublett v. Equitable Life Assur. Soc.,* 895 F.2d 1381, 1384 (11th Cir. 1990).

The appellants raise three questions on appeal: (1) Whether Tanner received money or property by signing false lien waiver affidavits?; (2) Whether the Bankruptcy Court erred by failing to apply the reckless disregard standard and by concluding that Tanner did not intend to deceive the title companies?; and (3) Whether the Bankruptcy Court misapplied the justifiable reliance standard and erroneously concluded that the title companies did not justifiably rely on the affidavits?

To state a case under 11 U.S.C. § 523(a)(2)(A), the appellants have the burden of proof and must generally demonstrate that: (1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation. *In re Bilzerian,* 153 F.3d 1278, 1281 (11th Cir. 1998). Failure to meet any element is fatal to a creditor's nondischargeability case. *AT&T Universal Card Services Corp. v. Reynolds (In re Reynolds),* 221 B.R. 828, 834 (Bankr. N.D. Ala. 1998) (citing *American Express Travel Related Service Compnay v. McKinnon (In re McKinnon),* 192 B.R. 768, 771 (Bankr. N.D. Ala. 1996). With regard to the first element, the Bankruptcy Judge found that Tanner did not have an intent to deceive Chicago Title or Lawyers Title when he signed the affidavits, even though he knew they contained false statements. She found that Tanner believed that he would be fully able to pay the outstanding bills relating to construction of the houses on lots 36 and 72 despite cash flow problems, that he had proceeds coming in from other sources which he believed would cover all his payments as they came due, and that he had done exactly the same thing for 26 years and had always been able to make the payments. The Bankruptcy Judge specifically found Tanner's testimony to be credible. Because she found that Tanner unequivocally knew that the affidavits were not altogether truthful on their face, the Bankruptcy Judge found it unnecessary to consider whether Tanner had a "reckless disregard" for the truth.

Appellants argue that the Bankruptcy Judge erred by failing to consider whether Tanner acted with "reckless disregard" as to the truth of the affidavits he was signing and as to his ability to cover all the debts still owed on the houses in question at the time he

5

signed the affidavits. They argue that reckless disregard can serve as a proxy for proof of actual intent, citing for support the Eleventh Circuit case of *Birmingham Trust National Bank v. Case,* 755 F.2d 1474 (11th Cir. 1985).

The appellants misunderstand to some degree the relation between the "reckless disregard" doctrine and the requirement of intent in a claim under § 523(a)(2)(A). While reckless disregard for the truth may if proved allow a court to infer intent to deceive in a claim brought pursuant to § 523(a)(2)(A), *Reynolds,* 221 B.R. at 835-36 (citing *Birmingham Trust National Bank v. Case,* 755 F.2d 1474 (11th Cir. 1985)), it cannot serve as a proxy for intent and must be supported by the totality of the circumstances. *See Palmacci v. Umpierrez,* 121 F.3d 781, 788-91 (1st Cir. 1997). The question in the present case, regardless of whether Tanner knew or should have known that he was signing a false affidavit or that he was possibly going to be unable to pay the outstanding bills, is whether the representation was made in bad faith. *See generally Palmacci,* 121 F.3d at 788-91. Since the Bankruptcy Judge conclusively decided that Tanner had absolutely no intention of inducing the appellants to provide him with title insurance by false representation, Tanner's alleged reckless disregard—even if it tends to support an inference of intent to deceive—is irrelevant. The court has no reason to disturb the Bankruptcy Judge's findings as to the credibility of Tanner's testimony with regard to his subjective intent at the time he signed the affidavits and as to the industry practice of signing the affidavits at issue despite outstanding unpaid bills. The appellants have therefore failed to demonstrate an element of false representation, and their appeals are due to be dismissed. Because the court finds

that the Bankruptcy Judge properly found that the appellants failed to meet one element of 11 U.S.C. § 523(a)(2)(A), it need not address the other issues raised on appeal.

For the foregoing reasons, the decision of the Bankruptcy Judge, dated November 14, 1997, will be affirmed as to both appellants. Separate orders, consistent with this memorandum of opinion, will be entered.

Done, this 30th of October, 1998.

---
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE